LULA H. WOODS ET AL. v. A. B. ROZELLE ET AL.

DEED OF TRUST. *Construction. Sale: Conveyance.*

   Under a deed of trust vesting title in the grantee, "his legal representatives, heirs and assigns, forever," and providing that upon default of payment the grantee, or, in case of his absence, death or refusal to act, the sheriff of the county, "at the request of the legal holders" of the secured note evidencing the grantee's debt, should sell the property, and that, upon such sale, the grantee or "his successor or successors," in trust in fee simple, should execute a deed to the purchaser, a conveyance executed by the sheriff is invalid, since he was not empowered to convey, but only (on certain contingencies) to make the sale.

FROM the chancery court of the first district of Coahoma county.

HON. A. H. LONGINO, Chancellor.

The opinion states the case.

*D. A. Scott*, for the appellant.

'' The executor or administrator, and not the heir, has the right to the possession of the bills and notes of the deceased, and it is his duty to present and demand payment of them, to

give notice in case of their dishonor, and make protest; in short, to do in respect to them what would have been the duty of the decedent to do had he lived; and if a bill or note be assigned to a dead man whose death is not known, it becomes the property of his personal representatives in like manner as if he had died after the transfer. So likewise if the transfer were made in good faith with knowledge of his death, as it could be made with no other intention than to place the instrument among his assets.'' 1 Daniel on Negotiable Instruments, sec. 264, and notes.

The second and only other objection advanced by opposing counsel to the validity of the sale by Yerger, sheriff, under the last mentioned mortgage, is to this effect: That the power of sale conferred in that instrument was personal to the beneficiary and to him alone, the legal title to the property conveyed being in the beneficiary and not in the acting sheriff of Coahoma county. It is thereupon gravely asserted that as the sheriff was not invested with the legal title to the lands conveyed, he could only act in the capacity of a mere auctioneer, without any right or power whatever in him to execute deeds to any person who might appear and bid for and become the purchaser of the property thus sold by him. We as gravely maintain that this proposition is radically unsound and unmaintainable. It is not justified by the language of the instrument itself, and when we come to construe this instrument as a whole we cannot escape the conclusion that the intention of the parties at the time of its execution was to provide a safe and very inexpensive method of foreclosing the instrument in the event of the death of the beneficiary. After having criticized the language of the instrument, and subjected it to the most hypercritical test, we go further and say, that according to the very strict letter and language of said instrument, the sale made by Yerger, as sheriff, was valid and binding in every particular, and that he had the unquestioned right not only to sell, but to convey the property sold to the purchaser thereof. After providing for the publi-

cation, by written or printed notice of the sale, the instrument
proceeds to say: "Upon said sale said party of the second part
(his successor or successors in trust, as the case may be), in fee
simple of the property sold. shall execute a deed or deeds to the
purchaser or purchasers thereof, his successor or sucessors." To
whom does this language apply? Beyond question, and to ac-
curately and properly answer this query, we must look to other
parts of the instrument, from which we find, as above stated,
that "in case of the absence, death, etc., of the other party,"
the acting sheriff of Coahoma county was fully authorized to
proceed to sell the property, and do all other things which
might or could have been done by the beneficiary, had he not
have "shuffled off this mortal coil." The record here not
only shows, but it is conceded by all parties, that the benefi-
ciary, Dickerson, died some time before the acting sheriff of
Coahoma county was requested to perform the duties devolved
upon him by the mortgage. Again, in the event of the sale,
what was to be done by the beneficiary or his successor or suc-
cessors in trust, and what was the intention of the grantors in
this instrument as to the duty of the beneficiary or his succes-
sor, in the event a sale of said property became necessary?
Transpose the language and see how it would read: "Upon
such sale, said party of the second part, his successor or suc-
cessors in trust, as the case might be, shall execute a deed in
fee simple of the property sold, to the purchaser thereof." If
this be not the true and correct construction of the language
used, what disposition are we to make of that portion of the
sentence which reads "in fee simple of the property sold shall
execute," etc.?

Opposing counsel warp this language in every conceivable
fashion, but, after all, it occurs to us that the language used is
simple, nontechnical and easily and readily understood. We
say, furthermore, with all due deference to learned counsel
and the learned chancellor who decided this case, that, despite
the act, no legal title to the property embraced in the mortgage

under consideration was vested in the acting sheriff of Coahoma county, yet he was fully authorized and empowered, under the terms and provisions of that mortgage, not only to sell the property covered thereby, but to execute all deeds of convey-ance necessary to convey a good, perfect and indefeasible title in fee in the purchasers of the same.

In this connection it is well to note the absence of any testi-mony to the effect that E. M. Yerger, sheriff, who sold and conveyed the property in controversy, under the power vested in him under the mortgage of March 2, 1882, was not the act-ing sheriff of Coahoma county, when said mortgage was orig-inally executed. "A power, technically speaking, is not an estate, but is a mere authority, enabling a person, through the medium of the statute of uses, to dispose of an interest in real property vested either in himself or in any other person." *Burley* v. *Cluf*, 52 N. H., 267. Bouvier defines a power in this case to be " an authority enabling a person, through the medium of the statute of uses, to dispose of an interest in lands, vested either in himself or in any other person." 2 Bouvier's Institutes, 335. See, also, 26 Am. & Eng. Enc. L. (1st ed.), 871, and notes.

Where a trust deed provides that in case of the absence, ina-bility or refusal of the trustee, the sheriff of the county may make the sale, and a sale by the sheriff in accordance with the terms of the deed, and upon the happening of the contingency mentioned, is a sale under the power, and divests the grantor of his title. *McKnight* v. *Wimmer*, 36 Mo., 132. It is, however, wholly unnecessary to go beyond the limits of our own state to ascertain what rule should be adopted for the con-struction of the power created by the instrument now being considered. See *Moore* v. *Lackey*, 53 Miss., 85. " Courts of equity will regard the substance and not mere form of agree-ments and other instruments, and will give the precise effect the parties intended in furtherance of that agreement." 1 Sto-

ry's Eq. Juris., sec. 791.   *Perkins* v. *Gibson*, 51 Miss., 699, 704, 705, cited with approval in case of *Moore* v. *Lackey.*

To avoid the force and effect of this latest enunciation from the supreme court of Mississippi, opposing counsel say that Judge Simrall was unwarranted in undertaking to decide the questions which we may say he decided squarely in our favor; that the language used by him is dicta, mere argument, and not decision.   However this may be, we insist that in this day of enlightened equity jurisprudence, Judge Simrall correctly announced the rules as above stated.   And even though it be true, as urged, that it was not in the Moore-Lackey case necessary for the court to have gone into that question, yet, having done so, it is entitled to great weight, and should be influential in determining the rights of the parties to this litigation, and it has stood so long unquestioned as to become a rule of property.

*Perkins & Watson* and *J. W. Cutrer*, on same side.

The property embraced in the instrument of security was conveyed to Dickerson, "his legal representatives, heirs and assigns, forever."   But it is subsequently provided that in the event the grantors should fail or refuse to pay the debt secured, or the interest, or any part thereof, when it became due and payable, that Dickerson, or, in case of his death, absence or refusal to act in anywise, that the "acting sheriff" of Coahoma county should, at the request of the legal holders of the note evidencing the debt secured, proceed to sell the property conveyed, or any part thereof, prescribing the time, place and terms of sale and manner of advertisement.   The instrument then provides that "upon such sale said party of the second part, Dickerson, his successor or successors in trust, shall execute a deed or deeds to the purchaser or purchasers thereof, and shall receive the proceeds of said sale, out of which shall be paid," etc.   It is to be considered, who were intended by the designation of the mortgagee's successor or successors in trust.

Although counsel for appellees vehemently argue the affirmative of the proposition, the mortgagee's personal representatives could not have been intended, though it is true, perhaps, as a general rule, that the personal representatives of a mortgagee, in a mortgage with a power of sale, has the right to execute the power.  But, in the instrument under consideration, the personal representatives of the mortgagee are expressly excluded from the exercise of this power, a circumstance which, strange as it may seem, is entirely overlooked by the counsel for appellees in their argument.  For, by the letter of the instrument itself, in the case of the death of the grantee and mortgagee in the deed, the "acting sheriff" of Coahoma county was to execute the power of sale, at the request of the legal holders of the note evidencing the indebtedness secured.

This can by no possibility be the correct construction of this phrase, and for the following reason: According to the terms of the security, the sale thereunder was to be made by the "acting sheriff," upon certain conditions, at the request of the legal holders of the note secured.  As a matter of course, it was not incumbent upon the mortgagee, nor any legal holder of the note secured, to exercise, or cause to be exercised, the power of sale as soon as the condition of payment was broken.  And where the note had passed to another, and one of the conditions upon which the sheriff might sell had occurred, manifestly, any time thereafter (within the period of limitation, of course), such holder might, according to the terms of the instrument, request the acting sheriff to proceed to execute the power of sale.  In other words, two conditions must have concurred to authorize the sheriff to execute the power of sale: (1) Either the death, absence or refusal to act of the mortgagee; and (2) the request to sell by the legal holder of the notes.  Therefore, the phrase, "acting sheriff," was obviously intended to designate the sheriff acting when these two conditions concurred, as none other could act.  Therefore, after the first condition had happened, the phrase, "acting sheriff," would apply, and would

only apply to the sheriff acting when the necessary concurrence took place—namely, when the request by the legal holder of the note was made.

This is the only rational construction of the provisions of the instrument under consideration, and that, therefore, the clause "said party of the second part, his successor or successors in trust, as the case may be," can only refer to the mortgagee and the sheriff, or successive sheriffs in office after the trust devolved, by the happening of either of the conditions upon the incumbent of the sheriff's office. There can be no doubt but that the sheriff, as successor in trust of the mortgagee in the deed under consideration, had the right to convey by express provision of the deed, as well as to sell. Counsel for appellees seek to concede his right to sell, but deny his right to convey. Such a power to sell, in a case of this sort, carries with it the right to convey. *Hunter* v. *Wooldert*, 55 Tex., 433; *Williams* v. *Oley*, 8 Hum. (Tenn.), 563; *Fogarty* v. *Sawyer*, 17 Cal., 599; *Valentine* v. *Piper*, 22 Pick. (Mass.), 433; 2 Jones on Mort., sec. 1889; *Lindley* v. *O'Reilly*, 50 N. J. L., 636; *Lang* v. *Stansel* (Ala.), 17 So. Rep., 519.

*Fitzgerald & Maynard*, for the appellees.

Before the acting sheriff named in this deed could exercise any power of sale, he would have to be first requested to do so by the legal holder of the note. It becomes, then, important to inquire who was the "legal holder" in the intendment of the words of the deed. By no fair nor legal construction of this deed can those words be held to mean the legal representatives of the deceased mortgagee. Technically, those words import the one who owns the note. But whenever it is apparent that a grantor has used a word to express an idea different from its technical signification, the court will construe it accordingly. *Warneck* v. *Limbra*, 71 Ills., 91. As already adverted to, the contingencies in this case which gave the sheriff the power to sell upon request of the legal holder of the notes, were absence

of the mortgagee, his death or refusal to act. Counsel surely will admit the power of the mortgagee to both sell and convey, and that by his absence or refusal to act while he was the holder of the note, he could not, by requesting the sheriff, give him the power to sell and convey. It would be absurd to say that the mortgagee, with power to sell, would refuse to do so to protect his own interest. Much more absurd would it be to say that he absented himself so that sale could not be made, and then requested the sheriff to sell. The words, "legal holder of the note," clearly meant, when construed with the other words of the deed, the assignees of the note. It will not do to say that it meant assignee if transferred during the life of the mortgagee, but after his death it meant the technical legal holder, whether legal representatives or assigns. This is a too narrow and refined distinction, not warranted by any rule of construction of deeds or wills. We think, then, that the technical words, "legal holder," as used in this deed, imported only the one to whom the note might be assigned. Jones, in his second volume on mortgages, section 1787, says that an assignee of a note secured by a mortgage with a power of sale, unless power is expressly given to him by the instrument, does not acquire the power of sale by his purchase. However that may be, we have no interest in discussing that question, as it does not arise in the case at bar. If the assignee had no such power, then there was a good reason for the provisions in this deed giving the power of sale to the sheriff by request of the legal holders of the note, upon the refusal, etc., of the mortgagee to act. This was to protect the legal holder against the oppression of the mortgagee and his legal representatives. We advance the proposition of law, which counsel cannot controvert, that if the words used in this deed, to wit, "legal holder of the note," must be construed as assignee of the note, then a sale made by the sheriff, upon the request of the executors of the mortgagee, is null and void, and conveyed no title. *Boone* v. *Miller*, 86 Texas, 74.

We advance the further proposition of law, that, under the facts in this case, the acting sheriff of Coahoma county, whether Alcorn or Yerger, was not authorized under this deed to make a conveyance of the land sold thereunder. For two reasons is this true, viz.: (1) Because the legal title was not vested in him by the grantors, but was conveyed expressly to the mortgagee, his legal representatives, heirs, and assigns; (2) because the power to execute the deed was expressly conferred upon the mortgagee, "his successor or successors in trust, as the case may be, in fee simple of the property sold."

Doubtless, able counsel on the other side will contend, that "his successor or successors in trust" was intended by the grantors to mean the sheriff acting when the request was made by the legal holder of the note. To concede for a moment that those words mean the sheriff, Alcorn, acting at the time the condition of the mortgage was broken, and his successor in office, Yerger, would be to give their case away; for we contend that Alcorn was meant as the acting sheriff, and that, as no provision was made for the sale by his successor, Yerger, a sale by him was void. Counsel are here met with a dilemma. If the successor in trust means that the mortgagee is called trustee, and Yerger is his successor in trust, then they are confronted with the words following successor, viz., "successors in trust," in the plural number. If they take the other horn of the dilemma, and say successor means Alcorn, and successors means Alcorn's successors in office, then they have given their case away, as we have shown. We have no doubt but that defendant's counsel, in their despair, will move the court to strike out from the mortgage the words "or successors" as surplusage. The acting sheriff may make the sale whenever requested by the holder of the note, the mortgagee, his successor or successors in trust, as the case may be, in fee simple of the property sold, shall convey and shall receive the proceeds of the sale. Counsel would, by means of striking out certain words, and by intendment, read into this power of

sale, trustees not mentioned, and then breathe into them the legal title, vested under the deed only in the mortgagee, his legal representatives, heirs, and assigns. But counsel forget the principle laid down in our law books, that "nothing can be assumed or presumed in construing a grant of this kind, and the very letter thereof must be followed." A matter of personal confidence is not to be extended beyond the express words and clear intention of the grantor. 1 Lewin on Trusts, 604.

Is it not more reasonable, in trying to get at the intention of the grantors in using the words, "the party of the second part, his successor or successors in trust, as the case may be, in fee simple of the property sold," to candidly admit that the legal representatives of the deceased mortgagee are meant? That is the only proper construction of the words borne out by the context of the instrument. Our court has held that while a mortgagee is not, and cannot, technically speaking, be called a trustee, yet he is a trustee in the sense that he holds the surplus money at a sale made by him as trustee for the grantors. In that sense, his legal representatives, who hold legal title, are his successors in trust. If only one legal representative, he is the successor in trust; if two or more, they are his "successors in trust, as the case may be." Technically, to the constitution of every express trust, there are essentially three elements, viz.: a trustee, an estate devised to him, and a beneficiary. The trustee and the beneficiary must be distinct personalities, or otherwise there could be no trust. *Greene* v. *Greene* (N. Y.), 21 Am. St. Rep., 745.

The mortgagee who has the power of sale is in no sense a trustee, as far as his security is concerned. He has the legal title vested in him for the security of his debt. When a power of sale is also given him, he is a quasi trustee, to the extent that he must faithfully and fairly execute the power, and account to the mortgagor for any surplus money arising at the sale. He is also a trustee to the extent that he is incapacitated from buying at the sale. 89 Am. Dec., 372a.

There is no question but that the mortgage was meant in this deed when the word trust is used. " His successors in trust," undoubtedly means the mortgagee's successors in carrying out the powers and trusts of this instrument. Intention is the pole star in the construction of both deeds and wills, when such construction will not violate settled rules of construction as fixed by the law. It seems to us that there can be no escape from the conclusion that "successor or successors in trust" meant the legal representatives of the mortgagee, when construed in connection with the qualifying words, "in fee simple of the property sold." The words of this mortgage are, "his successor or successors in trust in fee simple of the property sold." Who else could be the successors in fee simple of the property sold, if not the legal representatives, heirs or assigns? They alone were seized in fee simple of the property sold. The "acting sheriff" had no title. We presume counsel will deny the correctness of this interpretation of the meaning of the grantors, and will contend that they intended to write it thus: " Successor or successors in trust, as the case may be, shall execute and deliver a deed in fee simple of the property sold." But this is not the way it is written, and there is no rule of construction justifying such transposition. Perhaps if these words had no meaning, unless so transposed, then this might be the proper construction, but, taken in connection with the fact that the legal representatives had the legal title, and that the words have a clearly defined meaning as written, no transposition can be admissible. They also succeed to the rights and powers of the mortgagee in his death, and are sometimes called successors. They are the heirs at law.

Mr. Worcester defines the word successor to be one who succeeds or follows in the place or character of another, correlative to predecessor. Predecessor is defined: one who, dying first, leaves another in his place, an ancestor. Bouvier defines successor as " one who follows or comes into the place of another."

Counsel may combat the proposition of law that where a

mortgage contains a power of sale, the grant of the power is irrevocable, and does not cease on the death of the mortgagee, but survives to his legal representatives. 46 Miss., 28, 29. The legal representative is the only person to enforce the foreclosure. The distinction in the cases where this power survives and where it does not, is that between a naked or collateral power and one coupled with an interest. If the position be taken by defendant's counsel that "successor" refers to the sheriff who was acting when the request was made by the holders of the note, then what is the meaning of the words "or successors?" There could not be, at one and the same time, two acting sheriffs. Besides, only one is given the power of sale. Every word in this instrument must be given a meaning, if possible, and none can be stricken out as surplusage. If successor in trust refers to the acting sheriff, then the parties intended by it Alcorn, acting at the time the deed was made and condition broken, and "successors" necessarily refers to his successors in office. This argument leads, inevitably to this conclusion, that the power of sale was given to Alcorn, with the power to convey, if he sold; but no power to sell is given to his successors, who are invested with the power to convey. This is *reductio ad absurdum.*

Argued orally by *Calvin Perkins,* for appellant.

WOODS, C. J., delivered the opinion of the court.

This was a suit instituted in the chancery court of Coahoma county by the appellees for the cancellation of a certain deed of conveyance made by E. M. Yerger, sheriff of said county, to W. H. Dickerson and M. A. T. Dickerson, executor and executrix of the estate of P. C. Dickerson, deceased, in February, 1887, as a cloud upon appellees' title to the lands so conveyed. This conveyance was made after sale, under the provisions of a trust deed made by appellee, A. B. Rozelle, and his wife, Emma D. Rozelle, then in life, but now deceased, in

favor of said P. C. Dickerson, then, also, in life, but now also deceased. The question presented as to the validity of the deed here sought to be canceled is to be determined by the proper construction of the trust deed under which the sale and conveyance of the lands were made.

We quote from the trust deed certain important parts whose consideration and construction will make susceptible of easy solution the inquiry suggested in our last sentence, and with this question properly answered, the other points argued by counsel will be found to be self-solving.

We quote: " For and in consideration of the sum of ten dollars cash in hand paid, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, said parties of the first part (A. B. Rozelle and Emma Rozelle) have this day bargained, granted, sold, aliened and conveyed, and by these do hereby grant, bargain, sell, alien and convey, to said party of the second part (P. C. Dickerson), his legal representatives, heirs and assigns, forever, all of the following described lands," etc. Here follows in the deed in trust the description of the lands, and then the consideration for the execution of the note and the trust deed securing its payment, viz.: $11,048.25 due from the grantors in the trust deed to the grantee therein, and evidenced by their said promissory note of that date.

The trust deed then proceeds: " Now, therefore, if this note be paid off and discharged, with all interest accrued thereon when the same becomes due and payable, then this deed of trust shall be void and of no effect, and the property herein conveyed shall be reverted at the cost of the said parties of the first part. But should the said A. B. Rozelle and Emma D. Rozelle fail or refuse to pay the said debt or the said interest, or any part thereof, when the same or any part thereof shall become due and payable, then the whole shall become due and payable, and this deed shall remain in full force and effect. And the said party of the second part, or, in case of his

absence, death or refusal to act in anywise, then the acting sheriff of the county and state aforesaid, at the request of the legal holders of said note aforesaid, may proceed to sell the property hereinbefore described, or any part thereof, at public vendue, to the highest bidder, for cash, at Friar's Point,   .   .   . and upon such sale said party of the second part (his successor or successors in trust, as the case may be, in fee simple of the property sold), shall execute a deed or deeds to the purchaser or purchasers thereof, and shall receive the proceeds of said sale, out of which shall be paid, first, the costs and expenses of executing this trust, including compensation to the trustee for his services, and next shall apply the proceeds remaining over to the payment of said note and interest, or so much thereof as remains unpaid, and the balance, if any, shall be paid to the said parties of the first part, or their legal representatives.'' By this instrument, it will be noticed, the land was sold and conveyed to P. C. Dickerson, his legal representatives, heirs and assigns, and not to the acting sheriff, or any other stranger to the transaction. After condition broken, the title to the property was vested in Dickerson, his legal representatives, heirs and assigns.

It will next be observed that by the express terms of the trust deed, upon default made in payment, P. C. Dickerson, the grantee, was authorized to sell, and, the title being in him, to make deed or deeds to the purchaser or purchasers at such sale. Then, to meet three future possible contingencies, it is stipulated that the acting sheriff may sell—simply sell—in case of the death, absence, or refusal of Dickerson to act—that is, to sell, but then only when requested by the legal holders of the said note. This provision was inserted to meet all possible contingencies that might thereafter occur. Dickerson might die without having assigned the note, in which event his legal representatives or heirs would have no power to sell on default, and, therefore, this provision was inserted, by which the acting sheriff could make the sale upon the request of Dickerson's legal repre-

sentatives or heirs; or, Dickerson might die, be absent, or refuse to act, after having assigned the note, and, in either of these events the assignee or assignees, having no power of sale, might request the acting sheriff to act—that is, make sale.

It so happened, it is well to remark here, that P. C. Dickerson died before the trust was executed, and that his only heirs, his wife and son, became his executrix and executor. The heirs and legal representatives were found in the same two persons, and were the legal holders of the note. But we anticipate the complete consideration of the provisions of the trust deed. After the power of sale, just above set out by us, we find that it is further provided, that "upon such sale, the said party of the second part, his successor or successors in trust, as the case may be, in fee simple of the property sold, shall execute a deed or deeds to the purchaser or purchasers thereof," etc.

Who are to make conveyances after sale of the property? First, the party of the second part, if he be not dead and has not assigned the note; or, second, his legal representatives and heirs, if the grantee be dead and has not assigned the note; and, third, the assignees of the note. For to these, in the order named, the title to the property passed to these several parties, upon the happening of the contingencies contemplated as possible by the grantors in the trust deed. If there were any possible doubt as to the correctness of this view (and we think there is none), that doubt would be dispelled by the only reasonable interpretation which can be placed upon the terms of the trust deed, which confer the distinct power of executing conveyances after sale of the property. "Upon such sale, said party of the second part (P. C. Dickerson), his successor or successors in trust, as the case may be, in fee simple, of the property sold, shall execute a deed or deeds to the purchaser or purchasers thereof." Who are the successors in trust, in fee simple, of the property sold? Manifestly, the legal representatives, heirs and assigns of P. C. Dickerson, the persons specifically named in the conveying part of the trust deed. No

title or interest, by any express terms of the instrument, is vested in the acting sheriff, and title and interest are clearly vested in others.    We need not trouble ourselves about naked powers, powers coupled with an interest, or powers necessarily to be exercised in order to the execution of the trust, for the terms of this instrument render useless any discussion of the general law upon those subjects.    In addition to this, the very words employed in the paragraph of the trust deed last quoted by us, demonstrate that " the successor or successors in trust, as the case may be, in fee simple, of the property sold," cannot be applied to the acting sheriff.    There can never be two or more acting sheriffs at one and the same time, while there may be two or more legal representatives, heirs or assigns.    We do not pursue the matter further, for the question, as it seems to us, is readily solvable by the plain terms of the instrument itself.    It is unnecessary to consider in detail the assignments of error on the direct appeal and those presented by the cross appeal.    We have considered all of them, but the action of the court throughout is so clearly correct that we content ourselves with this statement.

*The decree is affirmed on appeal and cross appeal, and appellant will be taxed with all costs.*